IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division



FILED
IN OPEN COURT

MAR 2

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 1:21-CR-00027 (AJT) |
| v. | Count 1:	18 U.S.C. § 1349<br>Conspiracy to Commit Bank Fraud |
| ADIAM BERHANE, | |
| *Defendant.* | Counts 2-3:	18 U.S.C. § 1344<br>Bank Fraud |
| | Counts 4-6:	18 U.S.C. § 1029(a)(2), (c)(1)(B)<br>Trafficking in Unauthorized Access Devices |
| | Counts 7-9:	18 U.S.C. § 1028A<br>Aggravated Identity Theft |
| | Count 10:	18 U.S.C. § 1029(a)(3), (c)(1)(B)<br>Unlawful Possession of Fifteen or More Access Devices |
| | Count 11:	18 U.S.C. § 1029(a)(4), (c)(1)(B)<br>Possession of Access Device-Making Equipment with Intent to Defraud |
| | Forfeiture Notice |
| | UNDER SEAL |

INDICTMENT

March 2021 Term – at Alexandria, Virginia

COUNT ONE

(Conspiracy to Commit Bank Fraud – 18 U.S.C. § 1349)

THE GRAND JURY CHARGES THAT:

1. From at least May 2013 to October 2016, in the Eastern District of Virginia and elsewhere, **ADIAM BERHANE**, UNINDICTED CO-CONSPIRATOR 1 (UCC-1), TIFFANY YOUNGER, and others carried out a fraud scheme in which they unlawfully acquired thousands

of stolen credit card numbers and then used the stolen information to purchase goods, including gift cards, for their personal use. Thereafter, **BERHANE** and her co-conspirators would either (1) return the goods and cause the refunds for the purchases to be transferred to an account controlled by **BERHANE** or another member of the conspiracy; (2) keep the goods for personal use; or (3) redeem the gift cards at CAFFE AFICIONADO, a coffee shop in Arlington, Virginia that was co-owned by **BERHANE** and UCC-1.

General Allegations

2. Unless otherwise noted, at all times relevant to this Indictment:

   a. **BERHANE** and UCC-1 were involved in all facets of the conspiracy, and for at least a portion of the conspiracy, **BERHANE** and UCC-1 were residents of the Eastern District of Virginia.

   b. TIFFANY YOUNGER was a co-conspirator of **BERHANE** and UCC-1.

   c. CAFFE AFICIONADO was a coffee shop located in the Rosslyn neighborhood of Arlington, Virginia. CAFFE AFICIONADO was incorporated in the state of Virginia and operated from February 2013 until October 28, 2016. The co-conspirators used the point of sale machines at CAFFE AFICIONADO to redeem gift cards that co-conspirators had purchased with stolen credit card information.

   d. Chase Bank USA, N.A. (hereinafter "Chase Bank") was a wholly-owned subsidiary of J.P. Morgan Chase Bank, N.A., and was insured by the Federal Deposit Insurance Corporation (FDIC), and was therefore a financial institution, as defined by Title 18, U.S. Code, Section 20. Chase Bank is a financial institution that provides traditional banking services, including but not limited to, issuing credit cards in the Eastern District of Virginia and elsewhere.

   e. All amounts of currency, dates, and times are approximate.

## The Conspiracy and its Objects

3. From at least May 2013 to October 2016, in the Eastern District of Virginia and elsewhere, the defendant,

**ADIAM BERHANE,**

did knowingly and intentionally combine, conspire, confederate, and agree with UCC-1, YOUNGER, and others unknown to the Grand Jury, to commit Bank Fraud, that is, to knowingly execute and attempt to execute a scheme and artifice to defraud a financial institution and to obtain moneys, funds, credits, assets, and other property owned by, and under the custody and control of, a financial institution by means of materially false and fraudulent pretenses, representations, and promises, contrary to Title 18, United States Code, Section 1344.

4. The object of the conspiracy was to unlawfully obtain money and property from victim banks by using stolen credit card numbers issued to other individuals to make purchases, and specifically, inducing the victim banks to authorize fraudulent purchases.

## Manner and Means of the Conspiracy

5. In furtherance of the conspiracy, and to pursue its unlawful object, **BERHANE** and her co-conspirators employed the following manners and means, among others:

   a. **BERHANE** and her co-conspirators would and did purchase, obtain, and exchange stolen credit card numbers and the personal identifying information of real persons.

   b. **BERHANE** and her co-conspirators would and did possess and use a card printer/embosser and a magnetic stripe card reader/writer, among other device-making equipment. They used this equipment to create fraudulent and forged payment cards that appeared to be legitimate, but actually bore stolen card numbers and information.
...

c. **BERHANE** and her co-conspirators would and did use the fraudulent and forged cards to make purchases, including gifts cards and retail goods, at stores in the Eastern District of Virginia and elsewhere.

d. **BERHANE** and her co-conspirators would and did return fraudulently purchased items to retail stores. The proceeds of these transactions would be deposited and credited to accounts controlled by **BERHANE** and her co-conspirators, including accounts belonging to CAFFE AFICIONADO.

e. **BERHANE** and her co-conspirators would and did use the point of sale system at CAFFE AFICIONADO, within the Eastern District of Virginia, to redeem gift cards that had been fraudulently purchased using stolen payment card numbers. **BERHANE** and her co-conspirators would deposit the proceeds from redemption of fraudulently purchased gift cards into financial accounts controlled by the co-conspirators, including the bank account of CAFFE AFICIONADO.

f. **BERHANE** and her co-conspirators would and did possess and use false, fraudulent, and forged identification documents to facilitate the scheme.

Overt Acts

6. In furtherance of the conspiracy, and to accomplish the objects thereof, **BERHANE** and her co-conspirators committed within the Eastern District of Virginia and elsewhere the following overt acts, among others:

a. On numerous occasions from 2013 to 2016, **BERHANE** and UCC-1 obtained stolen card numbers. For instance, on or about January 25, 2014, an email account controlled by UCC-1 contained an email containing stolen card numbers and personal identifying information of real persons to whom the card numbers were assigned.

  b. On or about March 26, 2016, **BERHANE** used a Chase Bank card number ending in -4828 that belonged to Victim 1 to fraudulently purchase two gift cards at a grocery store within the Eastern District of Virginia.

  c. On or about March 30, 2016, a person unknown to the Grand Jury used a Chase Bank card number ending in -4828 that belonged to Victim 1 to fraudulently purchase four gift cards, each valued at $200, at a retail store within the Eastern District of Virginia.

  d. On or about March 31, 2016, **BERHANE** used a Chase Bank card number ending in -4828 that belonged to Victim 1 to fraudulently purchase $625.24 in merchandise at a retail shoe store within the Eastern District of Virginia. On or about April 1, 2016, a co-conspirator returned two of the purchased items for a total return value of $529.89. The returned funds were sent from the retail shoe store to an account controlled by **BERHANE**.

  e. On numerous occasions throughout the scheme, **BERHANE** provided YOUNGER with fraudulent and forged payment cards.

  f. On or about May 24, 2016, **BERHANE** instructed YOUNGER by text message how to complete a fraudulent transaction using one of the cards:

> YOUNGER: Any person can ring me?
> **BERHANE**: Yeah
> YOUNGER: At register
>      There's no place for me to enter
>      Card info
>      They do it ?
>      Zip
> **BERHANE**: Yes
> YOUNGER: Sec[urity] code ?
> **BERHANE**: It's right on the card
>      What's the zip you are using ? If she asks for house number you can make it up like 1123

  g. On or about July 4, 2016, YOUNGER entered a retail sporting goods store within the Eastern District of Virginia and attempted to return fraudulently purchased merchandise.

5

After YOUNGER told **BERHANE** by text message that the store employee had called over other employees to examine the return and took the receipt and merchandise from YOUNGER, **BERHANE** told YOUNGER to flee the store, as well as what to say if she were caught.

  h. On or about September 19, 2016, YOUNGER returned $845.99 in fraudulently purchased items to a retail clothing store in Washington, D.C., with the proceeds of the return deposited to the bank account of CAFFE AFICIONADO.

  i. On or about October 7, 2016, **BERHANE** advised YOUNGER by text message how to commit fraud at two retail stores:

    YOUNGER: [retail clothing store] I can swipe ??
    **BERHANE**: Yes straight up no worries
    YOUNGER: 3 no
       * * *
      Going to [retail shoe store]
       * * *
      At [retail shoe store]… use chip first or slide?
       * * *
      1 yes @ [retail shoe store]
      1 no [retail shoe store] & 3 no [retail clothing store]
    **BERHANE**: Ok I thought you got through at [retail clothing store] eventually
    YOUNGER: No- 3 nos & she wanted to get help from mgr
    **BERHANE**: Do the [retail shoe store] return for you. U can do it at Chevy chase today if you want in your way home they'll ask if you have it and just look at your card and repeat the last four they won't look at it believe me
      Got it
      U still have 5 more
    YOUNGER: Yes

  j. On or about October 1, 2016, a co-conspirator purchased $1,165.98 in merchandise at a retail clothing store within the Eastern District of Virginia using a Chase Bank card number ending in -8087 that belonged to Victim 2.

6

    k. On or about October 6, 2016, YOUNGER returned one of two fraudulently purchased items to a retail clothing store in Washington, D.C., causing the $845.99 provided for the return to be deposited into the bank account of CAFFE AFICIONADO.

    l. On or about April 4, 2016, the point of sale system at CAFFE AFICIONADO was used to redeem funds that had been loaded onto two $100 gift cards earlier that day using a loyalty card number associated with the residential address of a relative of **BERHANE**, such transaction further described in COUNT SIX.

    m. On or about October 28, 2016, **BERHANE** and UCC-1 were arrested. At the time of the arrest, **BERHANE** and UCC-1's residence contained numerous false and fraudulent cards encoded with stolen credit card numbers, multiple electronic devices containing thousands of stolen credit card numbers and the personal identifying information of victims, further described in COUNT TEN, and device-making equipment, further described in COUNT ELEVEN.

  (All in violation of Title 18, United States Code, Section 1349.)

## COUNT TWO

(Bank Fraud – 18 U.S.C. § 1344)

THE GRAND JURY FURTHER CHARGES THAT:

7. Paragraphs 1 and 2 of this Indictment are re-alleged and incorporated as if fully set forth here.

8. On or about March 26, 2016, within the Eastern District of Virginia, the defendant,

**ADIAM BERHANE,**

did knowingly execute and attempt to execute a scheme and artifice to defraud a financial institution, namely Chase Bank, and to obtain moneys, funds, credits, assets, and other property owned by and under the custody and control of, a federally insured financial institution, namely Chase Bank, by means of false and fraudulent pretenses, representations, and promises, namely—**BERHANE** purchased $236.24 of merchandise from a retail store in Virginia using stolen card information, thereby deceiving the bank as to whether the purchase was made by the accountholder, Victim 1, the person to whom the bank had issued the card number.

### The Scheme

9. It was part of the scheme that **BERHANE** and her co-conspirators would and did purchase, obtain, and exchange stolen credit card numbers and the personal identifying information of real persons.

10. It was further part of the scheme that **BERHANE** and her co-conspirators would and did possess and use a card printer/embosser and a magnetic stripe card reader/writer, among other device-making equipment. They used this equipment to create fraudulent and forged payment cards.

11. It was further part of the scheme that on numerous occasions throughout the scheme, **BERHANE** provided YOUNGER with fraudulent and forged payment cards.

12. It was further part of the scheme that **BERHANE** and her co-conspirators would and did use the fraudulent and forged payment cards to pay for purchases at stores in the Eastern District of Virginia and elsewhere.

13. It was further part of the scheme that **BERHANE** and her co-conspirators would and did return fraudulently purchased items to retail stores. The proceeds of these transactions would be deposited and credited to accounts controlled by **BERHANE** and her co-conspirators, including accounts belonging to CAFFE AFICIONADO.

14. It was further part of the scheme that **BERHANE** and her co-conspirators would and did possess and use false, fraudulent, and forged identification documents to facilitate the scheme.

(All in violation of Title 18, United States Code, Section 1344.)

## COUNT THREE

(Bank Fraud – 18 U.S.C. § 1344)

THE GRAND JURY FURTHER CHARGES THAT:

15. Paragraphs 1, 2, and 9 through 14 of this Indictment are re-alleged and incorporated as if fully set forth here.

16. On or about March 31, 2016, within the Eastern District of Virginia, the defendant,

**ADIAM BERHANE,**

did knowingly execute and attempt to execute a scheme and artifice to defraud a financial institution, namely Chase Bank, and to obtain moneys, funds, credits, assets, and other property owned by and under the custody and control of, a federally insured financial institution, namely Chase Bank, by means of false and fraudulent pretenses, representations, and promises, namely— **BERHANE** purchased $625.24 in merchandise from a retail store in Virginia using stolen card information, thereby deceiving the bank as to whether the purchase was made by the accountholder, Victim 1, the person to whom the bank had issued the card number.

(All in violation of Title 18, United States Code, Section 1344.)

## COUNTS FOUR through SIX

(Trafficking in Unauthorized Access Devices – 18 U.S.C. § 1029(a)(2), (c)(1)(B))

THE GRAND JURY FURTHER CHARGES THAT:

17. Paragraphs 1 and 2 of this Indictment are re-alleged and incorporated as if fully set forth here.

18. On or about the dates set forth below, in the Eastern District of Virginia and elsewhere, the defendant,

**ADIAM BERHANE**,

knowingly and with intent to defraud, did traffic in and use one and more unauthorized access devices during a one-year period, and did attempt to do so, and by such conduct did obtain something of value aggregating $1,000, each count affecting interstate commerce and further described in the table below.

| Count | Date | Description |
| --- | --- | --- |
| 4 | March 2, 2016 | Discover card number ending in -2806, used to obtain $1,354.63 between September 2, 2015 and September 1, 2016 |
| 5 | March 19, 2016 | Discover card number ending in -6238, used to obtain $6,593.96 between September 19, 2015 and September 18, 2016 |
| 6 | April 4, 2016 | Discover card number ending in -1149, used to obtain $1,385.28 between October 4, 2015 and October 3, 2016 |

(All in violation of Title 18, United States Code, Section 1029(a)(2) and (c)(1)(B).)

## COUNTS SEVEN through NINE

(Aggravated Identity Theft – 18 U.S.C. § 1028A)

THE GRAND JURY FURTHER CHARGES THAT:

19. Paragraphs 1 and 2 of this Indictment are re-alleged and incorporated as if fully set forth here.

20. On or about the dates below, in the Eastern District of Virginia and elsewhere, the defendant,

**ADIAM BERHANE,**

did knowingly possess, transfer, and use, without lawful authority, a means of identification of another person, knowing that the means of identification belonged to another actual person, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c)—namely, Trafficking in Unauthorized Access Devices, in violation of 18 U.S.C. § 1029(a)(2) & (c)(1)(B), as set forth in COUNTS FOUR through SIX of this Indictment, each count further described in the table below.

| Count | Date | Victim | Means of Identification |
|---|---|---|---|
| 7 | March 2, 2016 | Victim 3 | Discover card number ending in -2806 |
| 8 | March 19, 2016 | Victim 4 | Discover card number ending in -6238 |
| 9 | April 4, 2016 | Victim 5 | Discover card number ending in -1149 |

(All in violation of Title 18, United States Code, Section 1028A(a)(1).)

## COUNT TEN

(Unlawful Possession of Fifteen or More Access Devices –
18 U.S.C. § 1029(a)(3), (c)(1)(B))

THE GRAND JURY FURTHER CHARGES THAT:

21. Paragraphs 1 and 2 of this Indictment are re-alleged and incorporated as if fully set forth here.

22. On or about October 28, 2016, in the Eastern District of Virginia, the defendant,

**ADIAM BERHANE,**

did knowingly and with intent to defraud possess fifteen and more counterfeit and unauthorized access devices, affecting interstate commerce.

(All in violation of Title 18, United States Code, Section 1029(a)(3) and (c)(1)(B).)

## COUNT ELEVEN

(Possession of Access Device-Making Equipment With
Intent to Defraud – 18 U.S.C. § 1029(a)(4), (c)(1)(B))

THE GRAND JURY FURTHER CHARGES THAT:

23. Paragraphs 1 and 2 of this Indictment are re-alleged and incorporated as if fully set forth here.

24. On or about October 28, 2016, in the Eastern District of Virginia, the defendant,

**ADIAM BERHANE,**

did knowingly and with intent to defraud possess and have control and custody of device-making equipment, namely: one MSR605 magnetic strip reader/writer and one Datacard 150i embosser, affecting interstate commerce.

(All in violation of Title 18, United States Code, Section 1029(a)(4) and (c)(1)(B).)

## NOTICE OF FORFEITURE

The Grand Jury finds that there is probable cause that the property described in this NOTICE OF FORFEITURE is subject to forfeiture pursuant to the statutes described herein.

Defendant **ADIAM BERHANE** is hereby notified, pursuant to Federal Rule of Criminal Procedure 32.2(a), that upon conviction of any of the violations set forth in COUNTS ONE through THREE of this indictment, she shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the violation.

Defendant **ADIAM BERHANE** is hereby notified, pursuant to Federal Rule of Criminal Procedure 32.2(a), that upon conviction of any of the violations set forth in COUNTS FOUR through SIX and TEN through ELEVEN of this indictment, she shall forfeit to the United States, pursuant to 18 U.S.C. §§ 982(a)(2)(B) and 1029(c)(1)(C): (A) any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the violation; and (B) any personal property used or intended to be used to commit the violation.

Pursuant to 21 U.S.C. § 853(p), **ADIAM BERHANE** shall forfeit substitute property, if, by any act or omission of ADIAM BERHANE, the property referenced above cannot be located

upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(All in accordance with Title 18, United States Code, Sections 982(a)(2)(A), 982(a)(2)(B), 1029(c)(1)(C); and Fed. R. Crim. P. 32.2.)

A TRUE BILL:

*Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.*

Foreperson of the Grand Jury

RAJ PAREKH
ACTING UNITED STATES ATTORNEY

Monika Moore
Jonathan S. Keim
Assistant United States Attorneys